IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| REEF MOUNTAIN LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-1005-RGA |
| | ) | |
| AT&T SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPENING BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS UNDER FEDERAL RULE 12(B)(6) FOR
<u>FAILURE TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED</u>**

John W. Shaw (No. 3362)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
*Attorneys for Defendant*

OF COUNSEL:
Douglas M. Kubehl
Jeffery S. Becker
BAKER BOTTS LLP
2001 Ross Avenue
Dallas, TX 75201
(214) 953-6500

Dated:  September 15, 2017

## TABLE OF CONTENTS

**Page**

I.    NATURE AND STAGE OF THE PROCEEDINGS ...................................................... 1

II.    SUMMARY OF ARGUMENT ...................................................................................... 1

III.    STATEMENT OF FACTS .......................................................................................... 2

IV.    LEGAL STANDARD ................................................................................................. 4

    A.    Standard for Dismissal Under Rule 12(b)(6) ................................................. 4

    B.    Patent Eligible Subject Matter. ...................................................................... 5

V.    ARGUMENT ............................................................................................................... 6

    A.    *Alice/Mayo* Step One:  The '481 Patent Claims Are Directed to an Abstract
Concept ........................................................................................................... 6

        1.    The Fundamental Concept of the Claims Is an Abstract Idea. .............. 6

        2.    The Claims Are Not Directed to An Improvement in Computer
Functionality ...................................................................................... 11

    B.    *Alice/Mayo* Step Two:  The '481 Patent Claims Fail to Recite an Inventive
Concept ......................................................................................................... 14

        1.    Individual Claim Limitations – All Components and Steps are
Conventional or Routine Devices or Activities ................................... 14

        2.    The Claims Fail to Provide an Inventive Concept as an Ordered
Combination ........................................................................................ 17

VI.    CONCLUSION ......................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accenture Glob. Servs., GmbH v. Guidewire Software Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013)......................................................................6

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
  838 F.3d 1253 (Fed. Cir. 2016)....................................................6, 8, 14, 18, 19

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S.__, 134 S. Ct. 2347 (2014)..............................................1, 5, 14, 16, 19

*Apple, Inc. v. Ameranth, Inc.*,
  842 F.3d 1229 (Fed. Cir. 2016)...........................................................15, 17, 20

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*,
  569 U.S. __, 133 S.Ct. 2107 (2013)................................................................5

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016)...............................................................17, 18

*buySAFE, Inc. v. Google*,
  765 F.3d 1350 (Fed. Cir. 2014).....................................................................16

*Callwave Comm'ns LLC v. AT&T Mobility LLC*,
  207 F. Supp. 3d 405 (D. Del. 2016)..............................................................4, 9

*Christopher v. Harbury*,
  536 U.S. 403 (2002).................................................................................4

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014)...............................................................16, 18

*Cyberfone Sys., LLC v. CNN Interactive Grp, Inc.*,
  558 Fed. Appx. 988 (Fed. Cir. 2014)...............................................................5

*D&M Holdings Inc. v. Sonos, Inc.*,
  C.A. No. 16-141-RGA, 2017 WL 1395603 (D. Del. Apr. 18, 2017).........................7

*DDR Holdings, LLC v. Hotels. Com, LP*,
  773 F. 3d 1245 (Fed. Cir. 2014)...................................................................13

*Elec. Power Grp, LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016)...............................................................11, 17

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016).................................................................................11, 12, 14

*Erickson v. Pardus*,
   551 U.S. 89 (2007)..............................................................................................................4

*In re TLI Comm'ns LLC*,
   823 F.3d 607 (Fed. Cir. 2016)...............................................................................6, 11, 16

*Intellectual Ventures I LLC v. Capital One Bank (USA), N.A.*,
   792 F.3d 1363 (Fed. Cir. 2015)..........................................................................................15

*Intellectual Ventures I LLC v. Symantec Corp.*,
   838 F.3d 1307 (Fed. Cir. 2016).........................................................................5, 8, 9, 10, 17

*Intellectual Ventures I LLC v. T-Mobile USA, Inc.*,
   C.A. No. 13-1632-LPS, 2017 WL 3706495 (D. Del. Aug. 23, 2017) ..........................9, 11, 13

*Internet Patents Corp. v. Active Network, Inc.*,
   790 F.3d 1343 (Fed. Cir. 2015)......................................................................................4, 6

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
   837 F.3d 1299 (Fed. Cir. 2016).........................................................................................10

*Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*,
   811 F.3d 1314 (Fed. Cir. 2016).........................................................................................15

*Synopsys, Inc. v. Mentor Graphics Corp.*,
   839 F.3d 1138 (Fed. Cir. 2016).........................................................................................12

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014)...................................................................................6, 14, 17

*Visual Media v. NVIDIA Corp.*,
   867 F.3d 1253, 2017 WL 3481288 (Fed. Cir. 2017) ............................................................11

**Statutes**

35 U.S.C. § 101 ....................................................................................................1, 2, 4, 5, 10, 19

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ................................................................................1, 4

## I.     NATURE AND STAGE OF THE PROCEEDINGS

Reef Mountain LLC ("Plaintiff," or "Reef") filed suit against AT&T Services, Inc. ("AT&T") on July 24, 2017, alleging infringement of U.S. Patent 8,239,481 (the "'481 Patent"). On the same day, Reef sued six other defendants on the same patent.  *See* C.A. 17-1006-RGA; 17-1007-RGA; 17-1008-RGA; 17-1009-RGA; 17-1010-RGA; 17-1011-RGA.   On August 4, 2017, the parties filed a stipulation to extend the time for AT&T to respond to the complaint to September 15, 2017.   D.I. 6.   In lieu of answer, AT&T files the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dismissal of the complaint with prejudice is warranted because the '481 Patent is directed to the abstract idea of using a common interface to control one or more elements—an abstract idea that is not patent eligible subject matter under 35 U.S.C. § 101.  For the reasons set forth in detail herein, AT&T respectfully requests that the Court grant its motion to dismiss Reef's complaint pursuant to Federal Rule 12(b)(6).

## II.    SUMMARY OF ARGUMENT

In 2014, the Supreme Court's *Alice* decision re-affirmed the long-held principle that abstract ideas are not eligible for patent protection under § 101.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S.__, 134 S. Ct. 2347, 2354 (2014).  The "concern that drives this exclusionary principle is one of preemption."  *Id.*  "Laws of nature, natural phenomena, and abstract ideas are the basic tools of scientific and technological work."  *Id.* (quotations omitted).  As such, the preemption of such tools "might tend to impede innovation more than it would tend to promote it."  *Id.*  Neither the "recitation of a generic computer" nor "limiting the use of an abstract idea to a particular technological environment" is sufficient to transform an otherwise abstract idea into patentable subject matter.  *Id.* at 2358.

1

The '481 Patent attempts to preempt the exceedingly ancient and fundamental process that humans have conducted for centuries—communicating instructions to others who speak different native languages—by claiming that same abstract concept in the context of a generic networking environment. The '481 Patent's claims do not recite any non-generic or inventive concept, nor attempt to provide an improvement to any conventional computer technology. Instead, the claims describe the use of a generic interface to send a standard communication protocol instruction to a server that corresponds to a networked device that, itself, may use a different protocol. The claims then leap to the result of obtaining an unspecified "output" from the networked device, without any explanation or bounds as to how this is done. The '481 Patent describes the claimed interface as a conventional web browser, while the steps between providing the standard protocol instruction to the server and obtaining an output from the networked device are a complete black box. As such, the '481 Patent's results-oriented claims are an improper attempt to broadly preempt basic control activities in a networked environment. This patent falls squarely in line with existing case law that find such patents insufficient to survive § 101 under relevant Supreme Court, Federal Circuit, and District of Delaware precedent. Accordingly, AT&T respectfully moves to dismiss Plaintiff's complaint.

## III.    STATEMENT OF FACTS

According to the '481 Patent, in order to remotely control networked devices, a user previously had to access each device's individual interface, which "can become burdensome" because each interface must be "executed individually, one interface at a time." Ex. 1, at 1:41-49. By contrast, a user of a customized graphical interface application would face the disadvantage of maintaining the interface for each device on the monitor's computer. *Id.* at 1:50-66. Accordingly, the patent proposes to maintain the interface for each device on a server (such as a web server) and download the interface required for each device when selected through a

common interface (such as a web browser).  *See id.* at 8:55-9:26. The user may then control the device through the web browser by transmitting a standard communication protocol instruction to a server.  *Id.* at 9:27-41.  The alleged improvement provided was a "*common* user interface for supporting different device protocols in a network."  *Id.* at 2:19-21 (emphasis added).  The patent describes that the allegedly inventive "common user interface" may be obtained in a preferred embodiment by selecting links on a conventional web browser interface to download web applications (such as conventional Java applets) to be displayed on the web browser interface. *See id.* at 4:14-28; 8:29-30.  The web browser may be any conventional, prior art browser such as Microsoft Internet Explorer or Netscape Navigator.  *See id.*, at 9:10-16.

Claim 1 is representative of all independent claims of the patent and recites:

> 1.    A method for controlling devices in a computer system, the method comprising:
>
> obtaining a user selection of one or more of a plurality of networked devices to be manipulated from a user interface, wherein at least one of the plurality of networked devices requires device-specific protocol instructions that are different from protocol instructions required by at least one of the other plurality of networked devices;
>
> obtaining a user interface application corresponding to the selected one or more networked devices;
>
> transmitting, to at least one user interface selection device, the user interface application corresponding to the selected one or more networked devices so that the user interface can be displayed on the at least one user interface selection device;
>
> obtaining a user selection of an operation corresponding to at least one selected networked device;
>
> encoding the selected operation according to a standard communication protocol instruction;
>
> transmitting the selected standard protocol instruction to a server corresponding to the selected networked device; and
>
> obtaining an output corresponding to the selected operation of the selected networked device.

The claims generally recite a method for (1) obtaining a selection of a network device a user wishes to control, where the selected device *may, or may not,*[1] use a device-specific protocol (green limitations), (2) obtaining an interface application for communicating with that device to display on the interface (red limitations), (3) transmitting a standard protocol instruction to a server corresponding to the device (blue limitations), and (4) obtaining some form of "output" (purple limitations).  The other independent claims of the '481 Patent are directed to identical concepts.  *See id.* at independent Claims 17, 35, 48-50.  The dependent claims of the '481 Patent generally fall into the category of being directed to (a) specific conventional devices that can be controlled using the method of the independent claims (Claims 3-8, 16, 18-24, 33-34, 37-38, and 47 (variously specifying, *e.g.*, monitoring, image capture, and security monitoring devices)); or (b) specifying additional details of the functionality of conventional Internet technologies (Claims 2, 9-15, 17, 25-32, 36, 39-46).  *See* Section V.B.2, *infra*.

## IV.   LEGAL STANDARD

### A.    Standard for Dismissal Under Rule 12(b)(6).

Dismissal is appropriate at the pleadings stage under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief may be granted."  The Court must accept the factual allegations made in the complaint and take them in the light most favorable to the non-moving party.  *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002).  Patent eligibility under section 101 is a matter of law suitable for dismissal on the pleadings.  *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343 (Fed. Cir. 2015) (affirming dismissal for § 101 invalidity); *see also Callwave Comm'ns LLC v. AT&T*

---

[1] The claim on its face only requires *at least one* of the plurality of network devices to use a device-specific protocol, leaving open the possibility that the selected network device may use a device-specific protocol, or may not use such a protocol.

*Mobility LLC*, 207 F. Supp. 3d 405, 409 (D. Del. 2016) (same).  "There is no requirement that the district court engage in claim construction before deciding § 101 eligibility." *Cyberfone Sys., LLC v. CNN Interactive Grp, Inc.*, 558 Fed. Appx. 988, 992 n.1 (Fed. Cir. 2014).

**B.     Patent Eligible Subject Matter.**

Patent protection is available for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101.  This protection, however, is not without limits; the Supreme Court has "long held that this provision contains an important implicit exception[:] Laws of nature, natural phenomena, and abstract ideas are not patentable." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. __, 133 S.Ct. 2107, 2116 (2013) (quoting *Mayo Collaborative Servs. v. Prometheus Labs.*, Inc., 56 U.S. 66, 70 (2012)).  Under the two-part test described by the Supreme Court in *Mayo* and *Alice*, "[w]e must first determine whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea.  *Alice*, 134 S.Ct. at 2355.  If so, we must then "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo*, 56 U.S. at 79, 78).

Adding conventional networking or computer technology to an otherwise abstract idea is insufficient to save an abstract claim from ineligibility—"simply appending conventional steps, specified at a high level of generality, to . . . abstract ideas cannot make those . . . ideas patentable." *Mayo*, 566 U.S. at 82.  The "prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment," such the Internet.  *Alice*, 134 S.Ct. at 2358; *see also Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1319 (Fed. Cir. 2016) (holding that "performing otherwise abstract activity on the Internet does not save the idea from being patent-ineligible").

## V.     ARGUMENT

### A.     *Alice/Mayo* Step One:  The '481 Patent Claims Are Directed to an Abstract Concept.

#### 1.     The Fundamental Concept of the Claims Is an Abstract Idea.

The first step in the *Alice / Mayo* test is to examine the fundamental concept of the claim and determine whether the claim as a whole is directed to an abstract idea.  *Accenture Glob. Servs., GmbH v. Guidewire Software Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013) (stating the "Court must first identify and define whatever fundamental concept appears wrapped up in the claims"); *Internet Patents*, 790 F.3d at 1346 ("Under step one of *Mayo/Alice*, the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter.").  While the Court should be careful not to "oversimplify the claims" at this stage of the analysis, *In re TLI Comm'ns LLC*, 823 F.3d 607, 611 (Fed. Cir. 2016), the analysis should not focus on excess verbiage or implementation details, but instead focus on the "concept embodied by the majority of the limitations."  *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1256 (Fed. Cir. 2016) (examining claim after being "stripped of excess verbiage").

As explained in the Statement of Fact Section, the claims as a whole are directed to (1) obtaining a selection of a network device a user wishes to control, where the selected device may, *or may not*,[2] use a device-specific protocol (green limitations), (2) obtaining an interface for communicating with that device (red limitations), (3) transmitting a standard protocol instruction to a server corresponding to the device (blue limitations), and (4) obtaining some form of

---

[2] This claim recites an abstract idea, regardless of whether the selected device to be controlled does, or does not require use of a device-specific protocol.

"output" from the device (purple limitations).[3]  The basic concept underlying these steps is using

an interface (such as a web browser) to select a device for remote control, then send a standard

protocol instruction to a server, and then receiving some generic form of output corresponding to

a selected operation of the device.

While the patent purports to assign novelty to the use of a "common interface" to control

devices, the patent confirms that the purported novelty is nothing more than the proposed use of

a conventional web browser as the common interface:

| Claim step (excess verbiage removed) | Conventional web browser Embodiment |
|---|---|
| (1) obtain a selection of a network device a user wishes to control | select a device's URL from a web browser (*see* Ex. 1, at 3:61-4:28; 8:29-30; 8:55-9:3) |
| (2) obtain an interface for communicating with the selected device | download a Java applet corresponding to the selected device for display on the web browser (*see id.* at 4:6-11; 9:10-16; 10:56-62) |
| (3) transmit a standard protocol instruction to a server corresponding to the device | select a link on the Java applet, which causes the web browser to send an HTTP message to a web server (*see id.* at 4:19-28; 9:27-41) |
| (4) obtain some form of "output" from the device | obtain an updated web page reflecting information received from the device (*see id.* at 5:65-6:2; 6:38-44; 6:61-63; 12:55-65) |

Accordingly, when stripped of excess verbiage, the first two claim steps are merely

describing the conventional steps one would use with a conventional web browser to obtain an

---

[3] The dependent claims do not fundamentally change this analysis.  As discussed above in the Statement of Facts, the dependent claims add conventional details like (a) specifying a type of device to be controlled, and (b) specifying aspects of conventional Internet technology.  *See* Section III, above; *see also* Section V.B.2, *infra*.  These additional limitations do not change the fundamental nature of the claims as being directed to the abstract concept of using a common interface to control multiple elements.  Therefore, it is appropriate for the Court to consider Claim 1 as representative of the claims of the '481 Patent.  *D&M Holdings Inc. v. Sonos, Inc.*, C.A. No. 16-141-RGA, 2017 WL 1395603, at *2 (D. Del. Apr. 18, 2017) (holding that "the district court is not required to individually address claims not asserted or identified by the non-moving party, so long as the court identifies a representative claim and 'all the claims are substantially similar and linked to the same abstract idea'").

interface using conventional technology like Java and HTTP; they do not describe an improvement to an interface or to web browser technology. *See* Ex. 1, at 4:19-21 ("Upon request from the consumer via the web browser, the web browser locates and retrieves the desired hypertext document from the appropriate web server using the URL for the document and the HTTP protocol"); 10:60-62 ("The utilization of Java commands, or applets, is well known in the relevant art and will not be explained in greater detail.").

The remaining aspects of the claim boil down to nothing more than the basic steps inherent to the remote control of anything whether it be human or device—to remotely control something, you send an instruction and receive a response. Accordingly, the claims at their fundamental core are directed to the abstract idea of operating a common interface, such as a conventional web browser, to control one or more elements. *See, e.g., Affinity Labs*, 838 F.3d at 1262 (not finding "use of internet to be part of the character of the claim as a whole even though the claim required internet usage"). That the claim raises the possibility that the remote entity might speak a different language (i.e., a "device-specific protocol") than the interface (which uses a "standard communication protocol") and that the instruction is sent to a "server" as opposed to sending it directly to the remote entity itself, does not change the fundamentally abstract nature of the claim. This is no different than the age-old solution to the human problem of communicating with those who speak different languages—the use of an intermediary as an interpreter. *See Intellectual Ventures (Symantec)*, 838 F.3d at 1313 ("The category of abstract ideas embraces 'fundamental economic practice[s] long prevalent in our system of commerce,' . . . including "longstanding commercial practice[s]" and "method[s] of organizing human activity."). The use of an interpreter as an intermediary is an ancient and well-known human

activity and commonly used practice and is in no way a problem specific to computers or inherently rooted in Internet technology.

This Court has recognized claims directed to similar concepts as being directed to an abstract idea. *See, e.g., Intellectual Ventures I LLC v. T-Mobile USA, Inc.*, C.A. No. 13-1632-LPS, 2017 WL 3706495, at \*9 (D. Del. Aug. 23, 2017). In that case, the claims involved the use of a message server to convert between two well-known message formats (email and multimedia messages). There, Chief Judge Stark observed:

> Defendants argue that claim 17 covers an abstract idea because it addresses the problem of "incompatibility in communication." In Defendants' view, such a problem "has existed ever since human languages diverged" and claim [plaintiff's] solution "is equally ancient" because it involves "conversion to and from a common format." The Court agrees. . . . [Plaintiff] counters that claim 17 is not directed to an abstract idea because it is "limited to the transmission of multimedia messages in a multi-carrier environment." But claims that "limit [an] abstract idea to a particular environment" are "no less abstract for the step 1 analysis."

*Id.* at \*9-10. The '481 Patent claims recite basic steps that may lead to the need for a translation (transmitting a standard communication protocol instruction to a server) and claim the apparent result of that step (obtaining an output), but *do not* purport to require any particular improvement to the basic concept of conversion from a common format. Like the claims Chief Judge Stark addressed in *Intellectual Ventures I (T-Mobile)*, the addition of a vaguely defined server to fill the role of interpreter/intermediary does not prevent a finding that the claim is directed to an abstract concept. *See id.* (claims requiring a "multimedia message server" not patent eligible); *see also Callwave*, 207 F. Supp. 3d at 412 (finding that ". . . adding a vaguely defined intermediary that selectively forwards requests and returns responses does not make the underlying abstract idea any more concrete").

9

The abstract nature of this patent is further confirmed by the results-oriented nature of the claims.  *See, e.g., Intellectual Ventures (Symantec)*, 838 F.3d at 1316 (observing that *"when a claim directed to an abstract idea contains no restriction on how the result is accomplished and the mechanism . . . is not described, although this is stated to be the essential innovation . . . then the claim is not patent-eligible"*) (original formatting omitted).  Here, the claims merely recite using an interface to obtain and display "a user interface application" for a selected network device and then sending a "standard protocol instruction to a server."  Then, an unspecified "output" is obtained.  The claims do not specify ***how*** the user interface application is obtained or displayed; nor explains ***how or if*** the "standard protocol instruction" is actually communicated to the selected network device (which is described as using a "device-specific protocol"); nor explains ***how*** the "output" is obtained, where it is obtained from, or what does the obtaining.[4]

Although using a common interface to remotely control multiple devices is described as the key innovation of the patent (*see, e.g.,* Abstract), the claims merely describe, at an abstractly high level, a method that *results* from the implementation of the abstract idea rather than any particular way for achieving it.  *See, e.g., McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, at 1314 (Fed. Cir. 2016) ("We therefore look to whether the claims in these patents focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery.").  And even if the claims did require translation, this Court recognizes

---

[4] The Federal Circuit has repeatedly emphasized the need to focus on the *claimed* subject matter in the patentability analysis.  *See, e.g., Intellectual Ventures (Symantec)*, 838 F.3d at 1316 ("We have explained that, for a perceived abstract idea, if the *claim* contains an inventive concept sufficient to transform' the claimed abstract idea into a patent-eligible application, then the claims pass the test of eligibility under section 101." (emphasis in original, original quotations omitted))).

conversions of communication formats as an abstract idea.  *See e.g., Intellectual Ventures I (T-Mobile)*, 2017 WL 3706495, at *9.  As a result, the claims are "so result-focused, so functional, as to effectively cover any solution to [the] identified problem."  *Elec. Power Grp, LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016).

In essence, the claims are a classic example of unpatentable subject matter:  the recitation of an abstract idea where the claims provide (at best) a generic environment in which to carry out the abstract idea.  *See, e.g., In re TLI Comm'ns LLC*, 823 F.3d at 610-611 (finding claims abstract where "the specification makes clear that the recited physical components merely provide a generic environment in which to carry out the abstract idea").

### 2.   The Claims Are Not Directed to An Improvement in Computer Functionality.

The Federal Circuit recently clarified that a relevant inquiry at *Mayo/Alice* step one is "to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea," distinguishing between claims that are directed to the "improvement in the functioning of a computer" and claims that are "simply adding conventional computer components to well-known business practices."  *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1338 (Fed. Cir. 2016).  In *Enfish*, the Federal Circuit held that claims directed to a self-referential table for a computer database were directed to "a specific improvement to the way computers operate" rather than to an abstract idea.  *Id.* at 1336.  Likewise, in *Visual Media v. NVIDIA Corp.*, 867 F.3d 1253, 2017 WL 3481288, at *4 (Fed. Cir. Aug. 15, 2017), the Federal Circuit held that claims were not directed to an abstract idea where the claims were directed to an "enhanced computer memory system."  *Id.*

The holdings in *Enfish* and *Visual Media* are inapplicable to the claims of the '481 Patent because, as discussed above, the claims are not directed to an improvement in the functioning of

11

a computer.  Rather, they are directed to the abstract idea of using an interface to control one or more elements.  As an initial matter, the Federal Circuit has held that *Enfish* is inapplicable to claims that do not involve the use of a computer.  *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1140, 1149 (Fed. Cir. 2016) (holding that the plaintiff "cannot rely on our decisions in *Enfish*" where the claims did not recite a computer implementation).  Here, the method steps are so broadly written so as to be untethered from any requirement that a computer or machine perform the claimed method.  None of the claimed method steps are required to be performed by any particular machine or apparatus, and all could arguably be performed by a human either manually or in his or her head (or while sitting at a computer terminal).  For example, the claims could be read on a human purchasing a new thermostat for his home:

| Claim step (excess verbiage removed) | Human Activity |
|---|---|
| (1) obtain a selection of a network device a user wishes to control | choose to upgrade a thermostat to interface with a home air conditioning system |
| (2) obtain an interface for communicating with the selected device | travel to the store to purchase the thermostat, transport the thermostat home from the store, and install the thermostat |
| (3) transmit a standard protocol instruction to a server corresponding to the device | request a family member (i.e., a server), in English, to interact with the controls on the thermostat to turn the heat up or down[5] |
| (4) obtain some form of "output" from the device | experience the cooling or warming effect of the instruction on the home's temperature |

As a result, under *Synopsis*, the claims on their face do not require the use of a computer to perform the claimed method steps, and *Enfish* is therefore inapplicable.[6]  Even if Reef were to

---

[5] Even to the extent that the claimed "server" is interpreted to be a computing element, the step could nevertheless be performed, for example, by a human interacting with a computer terminal to transmit an instruction via the Internet.

[6] Although the specification might describe the use of a computer to perform the method steps, the Court should rely on the claims themselves and be careful not to rely on complex details from the specification.  *Synopsys*, 839 F.3d at 1149 (finding "the 101 inquiry must focus on the

*(Cont'd on next page)*

argue that the claims should be construed to require the method steps to require the use of a computer, that would not save the claims from patentability.  That is because the basic concept of the claims is not directed to solving a problem "rooted in computer technology," they are devoted to the abstract concept of using an interface to control one or more elements.  *See DDR Holdings, LLC v. Hotels. Com, LP*, 773 F. 3d 1245, 1257 (Fed. Cir. 2014) (finding claims patentable where the claimed solution was "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks").

In *DDR Holdings*, the Federal Circuit found that the claims were patent eligible because the claims were directed to replicating the "look and feel" of a third party website when accessed from an originating web site, a concept which had no corollary in the brick-and-mortar setting. *Id*.  Unlike *DDR Holdings*, the benefit of remote control using a human interpreter as an intermediary for instructions is exactly the same as the benefit the '481 Patent claims from the computer-implementation of the same practice.  Specifically, the originating interface (or person) does not need to know or learn the other device's (or person's) language in order to provide instructions.  *See* Ex. 1, at 10:5-7 (extolling that the "control application 226 is not required to maintain, or otherwise, any manufacturer-specific protocols").

Accordingly, the '481 Patent is not directed to a problem "rooted in computer technology" or one that is "specifically arising in the realm of computer networks."  *See DDR Holdings*, 773 F.3d at 1257; *see also Intellectual Ventures (T-Mobile)*, 2017 WL 3706495, at *9 (agreeing that claims directed to conversion to and from a common format were abstract because "such a problem 'has existed ever since human languages diverged' and [plaintiff's] solution 'is

---

*(Cont'd from previous page)*

language of the Asserted Claims themselves" and "complex details from the specification cannot save a claim directed to an abstract idea that recites generic computer parts").

equally ancient'").  And whatever efficiency might be ascribed to computer functionality from using a common interface to access multiple devices is not a result of any improvement provided by the '481 Patent; instead that is merely a routine benefit that inherently results from the use of a conventional web browser as a common interface to download and access different web sites. *See* Ex. 1, at 3:21-4:28.  Rather than provide some improvement in computer technology, the claims merely invoke computers as a tool to carry out the abstract process of controlling one or more elements.  *See Enfish*, 822 F.3d at 1336.  Accordingly, the Court should find that the claims are directed to the abstract concept of using a common interface to control one or more elements.

      **B.**     ***Alice/Mayo* Step Two:  The '481 Patent Claims Fail to Recite an Inventive Concept.**

           **1.**     **Individual Claim Limitations – All Components and Steps are Conventional or Routine Devices or Activities.**

The second step of the *Mayo/Alice* analysis (the search for an "inventive concept") asks whether the claim contains an element or combination of elements that ensures that the patent in practice amounts to significantly more than a patent upon the abstract idea itself.  *Alice*, 134 S.Ct. at 2355.  The '481 Patent fails *Alice/Mayo* step two because the claims merely instruct the practitioner to implement the abstract idea with "routine, conventional activity."  *Ultramercial,* 772 F.3d at 715.  For example, Claim 1 recites conventional activities that are routinely performed by interacting with Internet technologies such as a web browser as explained above in the *Alice/Mayo* step one analysis.  *See* Section V.A.1, above (chart showing how each step is directed to conventional web activities).

As discussed in the prior section, the claim steps are merely directed to routine and conventional functions of web browsers, which are by design capable to allow a user to click a link, download a web page or Java applet, and display the downloaded content on the web browser.  *See Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir.

2016) (holding that a "user downloadable application does not constitute an inventive concept sufficient to render the claims patent-eligible").  The Federal Circuit has already recognized that the use of an "interactive interface" to provide web pages to a user's computer is merely a description of conventional web activity and is insufficient to confer patentability.  *Intellectual Ventures I LLC v. Capital One Bank (USA), N.A.*, 792 F.3d 1363 (Fed. Cir. 2015) (finding that the "interactive interface limitation is a generic computer element"—it is "a generic web server with attendant software, tasked with providing web pages to and communicating with the user's computer"); *see also Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241-42 (Fed. Cir. 2016) (finding no inventive concept where the claim was directed to a graphical user interface that "generated a second menu from a first menu").  As such, these steps amount to nothing more than (at best) a basic description of generic Internet functionality, and are insufficient to supply the inventive concept required under *Alice/Mayo* step two.

The claims further recite "encoding the selected operation according to a standard communication protocol instruction," "transmitting the selected standard protocol instruction to a server corresponding to the selected networked device," and "obtaining an output corresponding to the selected operation of the selected networked device," where the selected network device may use a "device-specific protocol."  Again, this is simply a *partial* recitation of essentially the same steps for translating a human conversation using an interpreter (leaving out the crucial step of actually *translating* anything), written in the context of a generic computing environment that, at best, includes a "server" and a "networked device" in place of their human counterparts. *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324–25 (Fed. Cir. 2016) (holding that "generic computer components such as an 'interface,' 'network,' and 'database' . . . do not satisfy the inventive concept requirement.").  The specification confirms, however, that

the "server" can be any conventional computing server and the "networked device" can be virtually any conventional networked device known to man.   Ex. 1, at 6:3-37 (providing expansive list of networked devices); 7:22-24 (describing that central server 204 may comprise a "general purpose server operating system"); 7:53-58 (describing that premises server 230 includes "generally conventional components").

The Federal Circuit has found that the presence of a "server" in a claim is insufficient to confer an inventive concept where the server merely performed generic functions.  *See In re TLI Comm'ns LLC*, 823 F.3d at 612-614 (rejecting that a "server" in the claims confers patentability, holding that "[i]t is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea" where those components simply perform their "well-understood, routine, conventional" functions).   Here, the claimed server merely is the recipient of a standard protocol instruction which is no more than routine or conventional activity.[7]   Accordingly, these limitations amount to nothing more than a partial recitation of activities involved in human translation, along with a general instruction to "apply it" to a network environment composed from generic and conventional components.  *Alice*, 134 S.Ct. at 2358 (warning that reciting "an abstract idea while adding the words 'apply it' is not enough for patent eligibility," "[n]or is limiting the use of an abstract idea to a particular technological environment"); *see also buySAFE, Inc. v. Google*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (the use of a "computer network . . . is not even arguably inventive").[8]

---

[7] Moreover, Plaintiff contends that the "standard protocol instruction" is met by conventional Internet protocols such as Wi-Fi.   D.I. 1, Exhibit B, at B-15 (mapping the standard communication protocol to the "Wi-Fi protocol").

[8] The Federal Circuit has repeatedly held that performing a well-known process over a network or the Internet is insufficient to save otherwise ineligible claims.  *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343 (Fed. Cir. 2014) at 1347–48
*(Cont'd on next page)*

The claims do not offer any particular improvement to the computer itself and omit any programming details that might confer patentability—for example, the claim completely omits how or if the "standard protocol instruction" might be used to control a device that uses a "device-specific protocol."  *See* above, at Section V.A.1.   The omission of these key programming details militates in favor of finding an absence of an inventive concept, even in the presence of tangible components such as a server and networked device.  *Apple,* 842 F.3d at 1241-42 (method using software does not provide an inventive concept where the "difficulty of programming details . . . are not recited in the actual claims"); *Elec. Power Grp,* 830 F.3d at 1355 (holding that the step two "[i]nquiry must turn to any requirements for how the desired result is achieved").  Like the claims in *Elec. Power Grp* found to be unpatentable, "the claims at issue do not require any non-conventional computer, network, or display components or even a non-conventional arrangement of known, conventional pieces."  *Id.*

### 2.      The Claims Fail to Provide an Inventive Concept as an Ordered Combination.

Moreover, the basic combination of the claim as an "ordered combination" results in a method that combines steps for (1) interacting with an interface using steps that could be performed by a person using a conventional web browser with (2) the concept of sending an instruction intended for a remote entity that *might* need translation, and (3) obtaining a response. This combination fails to produce an "inventive concept."  *BASCOM Glob. Internet Servs., Inc.*

---

*(Cont'd from previous page)*

(stating that "[f]or the role of a computer in a computer-implemented invention to be deemed meaningful in the context of this analysis, it must involve more than the performance of 'well-understood, routine, [and] conventional activities previously known to the industry.' "); *Intellectual Ventures (Symantec)*, 838 F.3d at 1319 ("We have previously determined that performing otherwise abstract activity on the Internet does not save the idea from being patent-ineligible"); *see Ultramercial*, 772 F.3d at 716 (stating that the "claims' invocation of the Internet also adds no inventive concept").

*v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (the "requirement to perform it on the Internet, or to perform it on a set of generic computer components . . . would not contain an inventive concept").

In *Bascom*, the Federal Circuit found a sufficiently plead "inventive concept" because the claims recited an "ordered combination" that required "the installation of a filtering tool at a specific location, remote from the end-users, with customizable filtering features specific to each end user." *Id.* According to the Federal Circuit, this was because the "the patent describes how its particular arrangement of [conventional] elements is a technical improvement over prior art ways of filtering such content." *Id.* On the other hand, in *Content Extraction*, the Federal Circuit found that claims directed to the abstract ideas of extracting data and recognizing patterns did not recite an inventive concept because they simply recited "generic scanner and computer to perform well-understood, routine, and conventional activities commonly used in industry." 776 F.3d 1343, 1348 (Fed. Cir. 2014), *cert. denied*, 136 S. Ct. 119 (2015). Similarly, in *Affinity Labs*, the court found there was no inventive concept because "[t]he claim simply recites the use of generic features of cellular telephones, such as a storage medium and a graphical user interface, as well as routine functions, such as transmitting and receiving signals, to implement the underlying idea." *Affinity Labs*, 838 F.3d at 1262.

Here, the claims are more like the claims in *Contract Extraction* and *Affinity Labs*, and fail to provide an "inventive concept" in the "ordered combination" of the limitations like the Federal Circuit found in *Bascom*. The alleged technical improvement of the '481 Patent is providing a common user interface for remote control of networked devices, which is simply a broad mandate to apply the concept of controlling one or more elements using a common web browser and the Internet. And the recitation of sending a standard language instruction to a

server and receiving an output in response fails to add any unique innovation not already common to human activities. Accordingly, the claims are no "more than a drafting effort designed to monopolize the abstract idea" of remote control over using an interface in the context of a networked environment. *See Alice*, 134 S.Ct. at 2357.[9]

The dependent claims of the '481 Patent can be summarized as follows, and fail to add an inventive concept to the independent claims:

| General Concept | Dependent Claims |
|---|---|
| (a) specifying a type of device to be controlled | • Claims 3-8, 16, 18-24, 33-34, 37-38, and 47 (variously specifying, *e.g.*, monitoring devices, image capture devices, security monitoring devices) |
| (b) specifying aspects of a conventional web interface | • Claims 2, 18, 36 (a user is authenticated))<br>• Claims 9, 25, 26, 39, 40 (output indicates network status or confirmation of operation)<br>• Claims 10, 27, and 41 (Java applets may be displayed)<br>• Claims 11, 28, and 42 (interface application is deleted after use)<br>• Claims 12, 30, and 44 ("standard communication protocol" is device independent)<br>• Claims 13, 31, and 45 (interface is web-based)<br>• Claims 14, 29, and 43 (interface is dynamically generated)<br>• Claims 15, 32, and 46 (interface includes a graphical icon to select device) |

---

[9] A patent need not preempt the *entire field* to be ineligible; rather the question is whether "upholding the patents would risk *disproportionately* typing up the use of the underlying [abstract idea or] natural laws, inhibiting their use in the making of further discoveries." *See Mayo*, 132 S.Ct. at 1294. The Federal Circuit has observed that "claims that are so result-focused, so functional, as to effectively cover any solution to an identified problem' are frequently held ineligible under section 101." *Affinity Labs*, 838 F.3d at 1262 (holding the patent ineligible where the "claims are drafted in a way that would effectively cover any wireless delivery of out-of-region broadcasting content to a cellular telephone via a network").

These concepts are described by the patent as being conventional activities associated with the use of a conventional web browser to access content on the Internet. *See* Ex. 1, at 3:21-4:28. As such, none are sufficient to find that the claims recite an inventive concept. *See, e.g.*, *Apple, Inc.* 842 F.3d at 1241-42 (finding that "appending . . . preexisting technologies onto [unpatentable] independent claims does not make them patentable.").

## VI.  CONCLUSION

For the foregoing reasons, AT&T respectfully requests the Court grant its motion to dismiss Reef's complaint for failing to state a claim upon which relief may be granted.

Respectfully submitted,

*/s/ John W. Shaw*
John W. Shaw (No. 3362)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
*Attorneys for Defendant*

OF COUNSEL:
Douglas M. Kubehl
Jeffery S. Becker
BAKER BOTTS LLP
2001 Ross Avenue
Dallas, TX 75201
(214) 953-6500

Dated:  September 15, 2017

20